Mr. John Moses
844 Carteret Ave
Trenton, NJ 08618
(609)-815-1977
Pro Se Plaintiff

RECEIVED

APR 29 2020

AT 8:30
WILLIAM T. WALSH — M
CLERK

# IN UNITED STATES DISTRICT COURT FOR

# THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| JOHN MOSES | ) Civil Action |
| | ) |
| Plaintiff, | ) |
| | ) Case No.: No. |
| vs. | ) |
| | ) Jury Trial |
| | ) |
| WAYFAIR INC., MAX UNIMAN, | ) |
| LOUIS RODRIGUEZ, SHELLIE | ) |
| WEBER, MANAGER GERARD, | ) |
| MANAGER DONNIE LOVILL, ALL | ) |
| OTHER JOHN DOES | ) |
| | ) |
| Defendant(s) | ) |

**PLAINTIFFS' CIVIL COMPLAINT AGAINST WAYFAIR**

## COMPLAINT

The Plaintiff, John Moses comes by way of Pro Se, brings this action against his Ex-Employer: Wayfair, and their members of management; 2nd Shift Bulk Manager Gerald, 2nd Shift Bulk Supervisor Tom, Talent Manager Max Uuiman, Human Resource Manager Shellie Weber, 2nd Shift Receiving Supervisor Louis Rodriguez and 2nd Shift Bulk Manager Donnie Lovill and all other John Does 1-100, collectively Defendants. Plaintiff states his claims below as follows:

### *NATURE OF THE ACTION*

This is an action under Title VII of the Civil Rights Act of 1964 and Title VII of the Civil Rights Act of 1983 and 1990 (American with Disability Act) to correct unlawful employment practices and to provide appropriate relief to John Moses (black) and a class of similarly situated black employees who were adversely affected by such practices. As articulated with greater particularity in paragraph 7 below, the Plaintiff alleges that during the course of his employment, Defendants, Wayfair, 2nd Shift Bulk Supervisor Tom, Talent Manager Max Uuiman Max Uuiman, Human Resource Manager Shellie Weber, Shift Receiving Supervisor Louis Rodriguez and 2nd Shift Bulk Supervisor Donnie Lovill and all other John Does 1-100 (collectively Defendants), discriminated against Mr. Moses, a Cherry Picker Operator, when he was subjected to a racially hostile work environment. Plaintiff further alleges that Mr. Moses complained about the racial comments to three management officials, but no corrective action was taken to stop the discrimination. As a result, Mr. Moses was constructively discharged from his position.

Plaintiff further alleges that Wayfair similarly subjected to a racially hostile work environment. Mr. Moses the claimant suffered emotional distress and back pay damages as a result of Defendant's discriminatory actions.

## *JURISDICTION AND VENUE*

1. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343 and 1345. This action is authorized and instituted pursuant to §706(f)(1) and (3) of **Title VII** of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-5(f) and (3), ("**Title VII**"), and Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1983.

2. The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the District New Jersey.

## *PARTIES*

3. Plaintiff, John Moses (the "Plaintiff or Mr. Moses"), is the Pro Se Plaintiff residing in Trenton, New Jersey, in the County of Mercer, which is in the United States of America charged with the right, interpretation and enforcement of **Title VII**, and is expressly authorized to bring this action by Section 706(f)(1) and (3) of **Title VII**, 42 U.S.C. § 2000e-5(f)(1) and (3).

4. At all relevant times, Defendants, Wayfair, Inc., 2nd Shift Bulk Manager Gerald, 2nd Shift Bulk Supervisor Tom, Talent Manager Max Uuiman, Human Resource Manager Shellie Weber, 2nd Shift Receiving Supervisor Louis Rodriguez and 2nd Shift Bulk Manager Donnie Lovill. ("Defendant Employers" and/or "Defendants"), have continuously been and are now doing business in New Jersey and the Township of Cranbury and have continuously had at least two hundred and fifty (250) employees.

5. At all relevant times, Defendant Employers have continuously been employees engaged in an industry affecting commerce within the meaning of Sections 701(b), (g) and (h) of **Title VII**, 42 U.S.C. §§ 2000e(b), (g) and (h).

## *STATEMENT OF CLAIMS*

6. On October 18, 2019[1] prior to the institution of this lawsuit, John Moses filed a charge with the Commission alleging violations of **Title VII** by Defendant Employer. All conditions precedent to the institution of this lawsuit have been fulfilled.

7. Since at least 2019, Defendant Employees have engaged in unlawful employment practices at its Cranbury, New Jersey facility, in violation of sections 703(a)(1) of **Title VII**, 42 U.S.C. Section 2000e-2(a)(1) and 704(a) of **Title VII**, 42 U.S.C. § 2000e-3(a) when Defendants subjected Mr. Moses to a hostile work environment based on their race. These unlawful practices include, but are not limited to, the following:

(a) On September 23, 2019, John Moses was hired by Defendant (Wayfair) as a Cherry Picker Operator, for the second shift bulk department.

(b) On October 17, 2019, after Plaintiff was injured on a Cherry Picker Folk Lift. Plaintiff was reassigned off the Cherry Picker Folk Lift machine to the Receiving Department where Louis Rodriguez was the supervisor. Defendant said it was their post-accident policy to remove associates off the Cherry Picker Folk Lift machine that have accidents. While in the Receiving Department, Defendant allowed a racially hostile work environment to persist against John

---

[1] The copy of the EEOC Charge of Discrimination and the amended EEOC Complaint and the Right to Sue letter See Exhibit 1, 2 and 3

4

Moses, through a Spanish co-worker's (2nd Shift Receiving Supervisor Louis Rodriguez) consistent use of racially hostile remarks, including but not limited to "he was the head Nigger in charge," "he did not care if Plaintiff black ass was injured the night before" "he was still going to work Plaintiff black ass," "I don't need your sick black ass." and "Clock out Nigger."

(c) John Moses repeatedly complained to Defendants' management about the remarks, and various management officials advised that the situation would be addressed.

(d) On Friday, November 14, 2019 at 0900 AM Plaintiff was contacted by Mr. Max Uniman regarding Wayfair's Employee Referral Program[2]. The Defendant, Mr. Uniman, informed the Plaintiff he was denied a bonus of $500 under the Wayfair's Employee Referral Program for the referral for Mr. Adam Robinson after his hirer date. Once Plaintiff contested the denial of the referral, the Defendant proceeded to create a racially hostile work environment against the Plaintiff, John Moses, by verbal usage of racially bias and hostile remarks, including but not limited to derogatory statements made to Plaintiff "You are black man that thinks he knows it all, but don't know anything," "My black ass does not qualify for the $500 bonus payment", "he was still going to work Plaintiff black ass," "white people deserve the money more than me" "That white people know how to follow the Wayfair $500 bonus guidelines then the black people" "I don't give a fuck who your black ass go tell, they cannot make me give your black ass anything" "I will not be compensated my referral Adam Robinson black ass, and he don't believe he is my cousin like I said."[3]

---

[2] Wayfair's Employee Referral Program policy which contains seven pages, courtesy of Defendant Shellie Weber. On page three, paragraph provides an avenue which Plaintiff was entitled to the bonus because at his time of requesting the bonus to be paid out he was at the time a Wayfair employee. See Exhibit 4.
[3] The Wayfair's Employee Referral Program advertisement for $500. See Exhibit 5

5


(e) On November 14, 2019 around 5:00 PM into Plaintiff's work shift, Plaintiff was called into the Human Resources office by Shelly Webber. Defendant at the time started to confronted Plaintiff about the telephone conversation Plaintiff had with Mr. Uniman at around 9:00 AM, relating to the referral for Mr. Adam Robinson. Ms. Weber stated that Plaintiff was not entitled to the $500 bonus from the Wayfair's Employee Referral Program, because Defendant, Max Uniman and the Human Resource Department was already in conversation with Mr. Robinson and Plaintiff did not refer him to Defendant's (Wayfair) company.[4] Plaintiff stated that was not true, then that's when Defendant, Ms. Weber became agitated and started making derogatory statements to the Plaintiff. The Defendant Shellie Weber created a racially hostile work environment against John Moses. Human Resource Manager, Shellie Weber made racial hostile remarks, including but not limited to "They was already in talks with Allen Robinson black ass on the 16th[5], so I will not be getting referral bonus compensation for the black boy." "Everyone in the Human Resources Office feels that I disrespect them whenever I come into the HR office with my ghetto black attitude," "white people deserve the money more than me" "That white people know how to follow the Wayfair $500 bonus guidelines then the black people" "I don't give a fuck who your black ass go tell, they cannot make me give your black ass anything" "I come in to the HR office with my black attitude challenging them, and she is not going to allow me to do that. "Shelly Webber said that "she doesn't care if I take it up with the EEOC because black people don't know how to approach white people in an intelligent way without having an

---

[4] Plaintiff's three-page phone records. On page two of the phone records, it shows Plaintiff had called Defendant Max Uniman on 09/16/2019 at 03:42 and an incoming call from Adam Robinson 09/16/2019 at 03:35 which both calls were merged to introduce Mr. Uniman so that he set up for Mr. Robinson interview with Wayfair Inc., for employment. See Exhibit 6

[5] Plaintiff's text messages with Adam Robinson, stating that he had put Plaintiff's name down as the person that referred him to Wayfair for employment. See Exhibit 7

attitude or being violent" " she was going to put in my human resource file that I am not allowed in the HR office because of I am black person that don't know his place in the workplace".

(f) Instead of Defendants remedying the harassment, the work environment became intolerable, resulting in John Moses's constructive discharge.

## Wayfair's Defendants Permitted Preferential Treatment Against African America Employees

(g) On Thursday, October 17, 2019, around 6:00 PM into Plaintiff's work shift, Plaintiff was on the Cherry Picker Forklift machine. When he came out of the aisle H39, Plaintiff ran into the center support beam, while trying to avoid some Cherry Picker Forklift machines that were parked left unattended by other associates. The accident was not Plaintiff fault because Defendant, Wayfair had implemented a new paring policy in the middle of the floor which they did not inform any of the forklift drivers as to when it would start. The new parking area created a blind spot to all Forklift drivers. Plaintiff hit the support beam and had to receive medical treatment for an incision required eight stitches in the center of Plaintiff forehead. The Defendant Tom removed Plaintiff of the Cherry Picker Forklift machines stating it was Wayfair's Post Accident Policy when any accident with the Cherry Picker Forklift machines they must be taken off the machine for a week and retrained[6]. Plaintiff was removed off the machine until October 24, 2019. Defendants allowed preferential treatment towards Spanish associates over African Americans. Defendant showed indifference of treatment against African Americans when it came to punishment concerning to Wayfair's Post Accident Policy to Spanish associates.

---

[6] Wayfair's two-page Post Accident Policy. Which states underneath property damage, first accident written warning and associate will be prohibited from operating any machine for one week. See Exhibit 8

7

Plaintiffs has identified Non-African Americans Wayfair Associates who were given preferential treatment as listed below:

- On or about December 2, 2019 Wayfair team members, Tom (2nd shift Bulk Supervisor), Donnie (2nd shit Bulk Supervisor), and Chris (2nd shift Bulk Supervisor) witnessed Francisco [7] (Spanish Associate) hit the same support beam in front of the Supervisor's desk, damaging the Cherry Picker Forklift Machine No. 84 and Donnie told him it is okay and instructed Francisco to go get another machine to continue working.

- On or about November 29, 2019 Anthony[8] a (Caucasian Associate), hit the same support beam in front of the supervisor desk while he was still a temporary associate. 2nd shift supervisor Chris did not say anything. He was not taken off the Cherry Picker Machine for a week, He was not retrained on the machine. Nor was he given a drug test. In fact, he was given a full-time position with the Defendant's (Wayfair) company.

- On or about November 30, 2019 Anthony[9] another (Caucasian Associate), hit the rack in rug aisle number 34. 2nd shift supervisor Tom did not say anything. He was not taken off the Cherry Picker Machine for a week, he was not re-trained on the machine. Nor was he given a drug test.

- On or around November 06, 2019 Louis aka Choppo[10], from 2nd shift bulk, Sunday thru Wednesday shift hit the breakroom wall in building 44 and did not report it to management. Wayfair management later found out of the incident by looking at footage from the cameras. When they did find out about the incident Louis said, "his piss was

---

[7] Picture of Francisco. See Exhibit 9
[8] Picture of Anthony. See Exhibit 10
[9] Picture of another Anthony. See Exhibit 10
[10] Picture of Louis Choppo. See Exhibit 11

8

- hot". Donnie Lovill said ok, permitted him to sit at the managers desk. Did not take him off the Cherry Picker Machine for a week and just gave him a final written warning.

- On December 20, 2019, December 26, 2019 and January 3, 2020[11], the female Spanish cleaning associate is walking on the warehouse work area floor without a safety vest and is not written up, nor reprimanded; however, Emmanuel DayNuah an (African American Associate) employment was terminated by Gerald for getting caught waiting for his girlfriend to bring him his safety vest, because Gerald would not permit him to get a pink visitor vest.

Plaintiffs has identified African Americans Wayfair Associates who were Not given preferential treatment as listed below:

- On or about December 2, 2019, Gene[12] a (Haitian Associate) hit the railing in front of the 2nd Shift Manager Gerald's desk, by the conveyor belt ten, damaging nothing. However, he was seen by Gerald and taken off the Cherry Picker machine for one week, given a drug test, given directive to just empty loaded carts onto the conveyor belt and given retraining on the machine.

- On or about November 27, 2019, Alimoon Christopher[13] a (Haitian Associate) also hit a pole in front 2nd Shift Manager Gerald and Tom, he was taken off the Cherry Picker machine for one week, given a drug test, given directive to go over to the Receiving Department to work and given retraining on the machine.

---

[11] Picture of female Spanish cleaning associate. See Exhibit 12,13,14 and 15
[12] Picture of Gene. See Exhibit 16
[13] Picture of Alimoon Christopher. See Exhibit 17

- On or about November 6, 2019, Frank an (African American Associate) hit the railing in front of the 2nd Shift Manager Gerald's desk, by the conveyor belt eight, damaging nothing. He was seen by Gerald. He was taken off the Cherry Picker machine for one week, sent over to the Receiving Department to work, given a drug test, given retraining on the machine and his employment was terminated.

- On or about November 27, 2019, Emmanuel DayNuah an (African American Associate) hit the rack in aisle number 37, breaking the RF scanner. He went and told 2nd shift supervisor Chris what happened. He was sent home that night and not allowed to work for a week. Then called back to work 2nd Shift Operational Manager Tom, 2nd Shift Tom Manager Tom and 2nd Shift Chris agreed to give him a final warning. His employment was terminated when Defendant's (Wayfair Inc.) Peak season over, he was said to be caught stealing company time and not working while on the clock.

**Wayfair's Indifferent Treatment Regarding the Use of Cell Phones on The Warehouse Floor**

(h) On April 08, 2020 Shellie Weber called Plaintiff and advised him his employment was terminated for being on the cellphone while on the work floor on April 04, 2020. Defendant, Shellie Weber said they had another COVID-19 incident and they were checking the cameras, they claimed to have seen Plaintiff on his cellphone. Plaintiff was not called into work and given a chance to see the alleged video footage of him on the cellphone. Plaintiff was not given a written warning or verbal for allegedly being on the cellphone. Plaintiff did not have any other previous disciplinary write ups. Shellie Weber and Defendant Wayfair Inc. was quick to take action to terminate because he filed a discrimination charge against Shellie Weber, Louis

Rodriguez. Defendant Wayfair Inc has given preferential treatment when it comes to cell phones being used on the work floor.

Plaintiff has identified Non-African American Wayfair Associates who were given preferential treatment as listed below when it comes to using cellphones on the work floor while operating Wayfair's machinery:

- On February 22, 2019 at 5:03 PM Louis Rodriguez a (Spanish Associate) on the phone while operating a Wayfair Inc. employee bicycle to Receiving area.[14]

- On January 17, 2019 at 5:49 PM Louis Rodriguez[15] a (Spanish Associate) walking around on the phone while on the Wayfair Inc. work floor.

- On December 07, 2019 at 9:32 PM Oscar[16] a (Spanish Associate) on the phone while operating a Wayfair Inc. working on the conveyor belt in the Jack Pot area of the Wayfair Inc. warehouse.

(8) The effect of the practices complained of in Paragraph 7 above has been to deprive John Moses of equal employment opportunities and otherwise adversely affect their status as employees because they were forced to tolerate a working environment that was racially hostile and demeaning in violation of **Title VII**.

---

[14] Picture of Louis Rodriguez on February 22, 2019 at 5:03 PM his cellphone. See Exhibit 18
[15] Picture of Louis Rodriguez on January 17, 2019 at 5:49 PM on his cellphone. See Exhibit 19
[16] Picture of Oscar on December 07, 2019 at 9:32 PM on his cellphone. See Exhibit 20, 21 and 22

(9) The unlawful employment practices complained of in Paragraph 7 above were intentional and were done with malice or with reckless indifference to the federally protected rights of Mr. Moses in violation of **Title VII**.

## REQUEST FOR RELIEF

Wherefore, Plaintiff respectfully requests that this Court:

A. Grant a permanent injunction enjoining Defendant Employers, its officers, successors, assigns, and all persons in active concert or participation with it, from engaging in disparate treatment based upon a person's race or any other employment practice which discriminates on the basis of race.

B. Order Defendant Employers to institute and carry out policies, practices, and programs which provide equal employment opportunities to individuals, a work environment free of race discrimination and which eradicate the effects of its past and present unlawful employment practices.

C. Order Defendant Employers to institute and carry out anti-discrimination policies and a complaint procedure which encourages employees to come forward with complaints regarding violations of its policies against discrimination, harassment and retaliation.

D. Order Defendant Employers to institute and carry out a training program which shall promote supervisor accountability imposing on all managers and supervisory personnel a duty to actively monitor their work areas to ensure compliance with policies on non-discrimination and anti-retaliation; and requiring all managers and supervisors to report any incidents and/or complaints of harassment and/or retaliation of which they become aware to the department charged with handling such complaints.

E. Order Defendant Employers to make whole John Moses by providing appropriate back pay with prejudgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices, including but not limited to, front pay or reinstatement.

F. Order Defendant Employers to make whole John Moses by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described in Paragraph 7 above, including, but not limited to, out-of-pocket losses in amounts to be determined at trial.

G. Order Defendant Employers to make whole John Moses by providing compensation for past and future non pecuniary losses resulting from the unlawful practices described in Paragraph 7 above, including pain and suffering, humiliation, embarrassment, inconvenience, and loss of life's pleasures, in amounts to be determined at trial.

H. Order Defendant Employers to pay John Moses punitive damages for its malicious and reckless conduct described in Paragraph 7 above, in amounts to be determined at trial.

I. Grant such further relief as the Court deems necessary and proper in the public interest.

J. Award the Plaintiff his costs of this action.

## *JURY TRIAL DEMAND*

Plaintiff requests a jury trial on all questions of fact raised by its complaint.

Respectfully Submitted,

*John Moses*

John Moses