John Moses
844 Carteret Avenue
Trenton, NJ 08618
(609)-815-1977
Pro Se Litigant

RECEIVED

JUL 23 2026

AT 8:30 _____ M
CLERK, U.S. DISTRICT COURT - DNJ

## IN THE UNITED STATES DISTRICT COURT
## FOR THE OF NEW JERSEY

| | | |
|---|---|---|
| JOHN MOSES | : | |
| Plaintiff | : | **JURY DEMAND** |
| V. | : | Case No. |
| | : | |
| WAYFAIR LLC., TALENT MANAGER: MAX UNIMAN | : | 3-20-CV-05278 - RK-JTQ |
| HUMAN RESOURCE MANAGER: SHELLIE WEBER, | : | |
| 1st Shift RECEIVING SUPERVISOR: TOM, | : | |
| 2nd Shift RECEIVING SUPERVISOR: LUIS RODIGUEZ, | : | |
| 2nd Shift RECEIVING SUPERVISOR: CHRIS KEATS | : | |
| 2nd SHIFT BULK MANAGER: GERROD SMITH, | : | |
| 2nd SHIFT BULK MANAGER: DONALD LOVILL, | : | |
| AND ALL OTHER JOHN DOES -100 | : | Civil Action |
| | : | |
| Defendants | : | |

## <u>PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGEMENT FOR THE SECOND TIME</u>

1

NOW COMES Plaintiff, by and through way of Pro Se Litigant, and he files this Response in Opposition to Defendant's second Motion for Summary Judgment ECF 150. Plaintiff seeks to have his Opposition brief overrule defendant's renewed motion for Summary Judgement to dismiss Plaintiff's remaining race discrimination claims under Title VII of the Civil Rights of 1964 ("Title VII") and the New Jersey Laws Against Discrimination (NJLAD) under the First Amended Complaint ("FAC") brought by Plaint John Moses (herein as Plaintiff).

## **INTRODUCTION**

This Court on June 4th 2026 granted Defendant's request for leave to revisit summary judgement after Defendants signaled to the Court two times (ECF 145 and 150). Plaintiff, John Moses worked for Wayfair from September 23rd, 2019 until April 08, 2020.

This Court back on September 6th, 2026, this Court held that D.I. 105, paragraph 9-10 stated Defendants' Motion for Summary Judgement as to the race discrimination claim under the NJLAD surrounding Plaintiff's termination as to all Defendants (Count V) is Denied, and Defendants' Motion for Summary Judgement as to the race discrimination claim under Title VII surrounding Plaintiff's termination with respects to Wayfair (Count V) is Denied. At that time this Court also identified two genuine issues of material facts that precluded summary judgment on Plaintiff's claims: which are (1) whether Plaintiff was using his phone

in violation of Wayfair' s Electronic Device Usage Policy and (2) whether an IT incident occurred which prevented Plaintiff from working. Those two genuine issues of material facts that precluded summary judgment still exist.

## DISCUSSION

The Defendants are trying to persuade this Court to overrule it's document entry (D.E. herein) 105 that stated at paragraph 1-8 their Summary Judgement was granted and at paragraph 9-10 stated the Defendants' Motion for Summary Judgement as to the race discrimination claim under the NJLAD surrounding Plaintiff's termination as to all Defendants (Count V) is Denied, and the Defendants' Motion for Summary Judgement as to the race discrimination claim under Title VII surrounding Plaintiff's termination with respects to Wayfair (Count V) is Denied. The Defendants are now arguing that Plaintiff phone records will fulfill the evidentiary gap that played a major part in a denial of Summary Judgement for the Plaintiff's (Count V) NJLAD and Title VII claims Plaintiff disagrees.

## LEGAL STANDARD

The Plaintiff is utilizing this court's Legal Standard from September 6th, 2026 (The Opinion and The Order). A motion for summary judgment should be granted only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[T]he dispute

3

about a material fact is 'genuine' ... if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "A factual dispute is 'material' if it 'might affect the outcome of the suit under the governing law.'" Razak v. Uber Techs., Inc., 951 F.3d 137, 144 (3d Cir. 2020) (quoting Anderson, 477 U.S. at 248).

"The Court must view the facts and evidence presented on the motion in the light most favorable to the nonmoving party." Razak, 951 F.3d at 144 (citing Anderson, 477 U.S. at 255); see also Pichler v. UNITE, 542 F.3d 380, 386 (3d Cir. 2008). Summary judgment "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." Hunt v. Cromartie, 526 U.S. 541, 553 (1999). While a "judge's function is not ... to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial[,]" Anderson, 477 U.S. at 249, a non-moving party must "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). A non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

4

## ARGUMENT

The two genuine issues of material facts continue to persist with respect to Count V, and summary judgment should be denied again.

The two genuine issues of material facts were (1) whether Plaintiff was using his phone on the warehouse work floor making Plaintiff in violation of Wayfair' s Electronic Device Usage Policy and (2) whether an IT incident occurred which prevented Plaintiff from working. The Circuit Courts have held that when the court is evaluating employment cases, the task of the Court is not to second-guess employment decisions, but it is instead to determine whether the employment decisions were motivated by an illegal discriminatory purpose." Allia v. Target Corp., No. 07-4130, 2010 WL 1050043, at *6 (D.N.J. Mar. 17, 2010) (citing Ezold v. Wolf, Block, Schorr & Solis-Cohen, 983 F.2d 509, 525-27 (3d Cir. 1992).

## PLAINTIFF'S OPPOSITION ARGUMENTS

**I.      The genuine issue of material fact whether Plaintiff was using his phone in violation of Wayfair' s Electronic Device Usage Policy.**

The Defendants provided Plaintiff with their best video footage evidence that they claim caught Plaintiff John Moses sitting down on the back of a Cheery Picker machine while using his cell phone. This Court examined the video footage and the Court held [no visible phone video footage(herein)].

5

**D.E. 104 page 27 at ¶ ¶ 2-3 provides:**

> The Court has carefully examined the video footage, (see ECP Nos. 91-17, 91-18, 91-19), and notes that the vantage point of the warehouse floor within the videos renders it difficult to determine precisely what Plaintiff is doing. Plaintiff appears to be sitting and resting on a pile of wood within the warehouse. No phone is visible. Indeed, Defendants themselves only state that Plaintiff was speaking on his Bluetooth headset in the video. (See Def. SUMP Resp. ¶ 63. In addition, there is no timestamp and no date on the footage provided to the Court, thus complicating the Court's task in determining the actual time of this video footage.

At this instance Defendants are trying to move the Court to change it's ruling because this Court recently permitted Plaintiff phone records. The phone records (D.E. 154-4) that Defendants are presenting to this Court are weightless and they do not erase genuine issue of material fact that there is [no visible cell phone] and/or that there is no date and timestamp on the video footage.

II.    **Defendants claim that Plaintiff was actively engaged in phone calls and texts during the very period when HR Manager Shellie Weber heard an employee speaking on a cell phone while going on to the warehouse floor.**

The Defendants are putting the cart before the horse by thinking now that they have the phone records they can show they caught Plaintiff with the **[smoking gun]**. The **[smoking gun]** is not the cell phone records. The **[smoking gun is the cell phone]** being identified inside Plaintiff's hand while the Plaintiff is while working (D.E. 91-16) on the warehouse work floor. The Defendants have not

6

presented any of their video footage that captures Plaintiff with a cell phone device in his hand while working on the warehouse work floor. The Defendants tried to establish the boundary of the warehouse work floor differently than what Workplace Safety literature defines it as. (Exhibit 19 Wayfair-Moses 0003 different from Exhibit 7 D.E. 91-16) The warehouse floor in this literature is defined as place by metal shelves with boxes stacked on them. Defendant Gerrod, after being pressed hard, finally he walked back what he said management considered to be the warehouse floor. (Gerrod Smith's Deposition Testimony Exhibit two 86:18:25) The phone records are only transcripts detailing what cell phone calls and texts T-Mobile provided to the Plaintiff, giving Plaintiff a time when they (the phone calls and/or texts) came in, and giving Plaintiff a place (location) where they (the phone calls or texts) came from. The Defendant's ("No Visible Phone video footage) is the crux of their Summary Judgement motion. The Defendant argument that Plaintiff was actively engaged in phone calls and texts during the very period when HR Manager Shellie heard an employee speaking on a cell phone while going on to the warehouse floor, that argument cannot be corroborated by any surveillance video footage, and/or ultimately cannot be equated as a violation of Wayfair's Electronic Device Usage.

The phone records do not remove the genuine issue of material fact whether Plaintiff was using his phone in violation of Wayfair' s Electronic Device Usage

7

Policy. The Defendants lawyer has two different statements as to why HR Manager

Shellie Weber was even tracking Plaintiff's movement throughout the building for

violating Wayfair' s Electronic Device Usage.  Defendant's HR Manager Shellie

Weber termination report Provides (Exhibit 3):

> On Friday 4/3/2020 at approximately 5:10PM I heard someone speaking on their phone in the lobby area outside of my office. I could tell they were on the phone as I could one part of a conversation with no response. I heard the person enter the warehouse while still on a phone. I left my office and walked out to the floor in an attempt to determine who the person, as it is a direct violation of our company policy for safety reason. (See Shellie Weber
> termination report Wayfair-Moses 000022.)

Defendant's Shellie Weber Declaration

D.E 91-10 pg. 7 ¶¶ 26 & 27 Provides (Exhibit 4):

> On April 3, 2020 at approximately 5:10p.m, while in my office, I heard a male voice outside my office having a one -sided conversation, as someone would while on a phone call, making his way to the warehouse floor while speaking on a phone. Being on the phone while on warehouse floor poses a safety concern and is a direct violation of Wayfair's Electronic Device Usage Policy. (See Shellie Weber
> Declaration ¶¶ 26 & 27.)

On Friday 4/3/2020 Defendant's Shellie Weber terminated Plaintiff's employment

with Defendant Wayfair company because of her ["I heard the person enter the

warehouse while still on their phone"] statement. Defendant's Shellie Weber's

termination report leaves you to believe that Plaintiff's was terminated because she

heard someone [enter the warehouse while still on their phone]. Then on March 1ˢᵗ, 2024, in Shellie Weber's Declaration she states Plaintiff's employment was terminated because she heard ["I heard a male voice outside my office having a one -sided conversation, as someone would while on a phone call, making his way to the warehouse floor while speaking on his phone"] This is a major walk back. It is inconsistent, and she was under oath. This change in her statement now leads one to believe that Plaintiff never committed a Wayfair Electronic Device Usage violation. The warehouse work floor work floor does not start until the gray rug identified in the video footage Wayfair-Moses 000046.

**Witness Gerrod Smith's Depo. Test.  Provides Exhibit 1:**

Q.    So here is where the Wayfair -- where the
Wayfair rug is at in this particular video of
Wayfair 46, ending in 46, that gray area where the
rug is at is not a workhouse floor -- is not a
warehouse floor, right?
MR. SZYBA:      Objection.
THE WITNESS:   No.   It's part of the
warehouse.  It's not the warehouse floor.
(Gerrod Smith's deposition 86:18:25 &  Exhibit 8)

This inconsistency is a genuine issue of material fact as to whether Plaintiff was even using his phone in violation of a Wayfair' s Electronic Device Usage. An individual having a one-sided conversation, as someone would while on a phone call, making his way to the warehouse floor while speaking on his phone (Exhibit 18A &18B contradictions in her Termination Report of John Moses: Gerrod

9

Smith's Deposition Testimony Exhibit two 145:11:21, 146:1:23, 150:8:23, 153:1:8, D.E. 91-16, Exhibit 6, 7 & 8) is not defined as a violation by Wayfair's Electronic Device Usage Policy (Exhibit Nineteen 91-16). Defendant Shellie Weber's termination report is a contradiction as to what really happened as to why she terminated Plaintiff employment. (149:2:7, 149:12:24, 150:11:23) plaintiff has the burden of casting doubt on an employer articulated reasons an employment decision. Ezold v. Wolf, Block, Schorr & Solis-Cohen, 983 F.2d 509, 525-27 (3d Cir. 1992)) If we were to assume Defendant Shellie Weber was telling the truth the exhibit 8 map would contradict her story the hallway, she pops up in the video not by her office. (Exhibit 5 & 6) And that would make it impossible for her to hear a person enter the warehouse floor because it is a door there and it is a long distance to determine where the person could be going.

**Witness Gerrod Smith's Depo. Test.  Provides Exhibit 1:**

A.    Security right across from HR and
talent acquisition.
Q.    Thank you.  Good thing you said security.
So now the security desk. Where -- you're
saying the security desk is right across from the
TAR office, which is the talent acquisition
office.       Am I correct?
A.    Yes, you are.
Q.    Okay. And right next to that actual
doorway am I correct there's a door that leads to
another hallway that you can go directly to the
workroom floor?   Am I correct?
A.    Yes.
(Gerrod Smith's deposition 26:8:20)

10

The math (The Phone Records) is not mathing. The Defendants do not have any physical proof that Plaintiff was the one using his cell phone at times the cell phone records show. The cell phone records do not show proof as to the location in the building the cell phone was being utilized at. The phone calls and texts that are on Plaintiff's phone records could have been made from anywhere. The phone calls and texts could have been made from any location off Wayfair's warehouse work floor: the phone calls and texts could have been made from any of the breakrooms, any of the bathrooms, the computer room, any of the parking lots and/or the main lobby area. And even if we were to assume that they were made on the way to the warehouse floor, that is not in violation of Wayfair's Electronic Usage Policy. (Damon Seale's Deposition Testimony Exhibit one 57:17:22 Gerrod Smith's Deposition Testimony Exhibit two 65:12:22 and 145:7:21.) All those named areas are not classified as violations of Wayfair's Electronic Device Usage policy. The Defendants presented a video that was supposed to have the Smoking Gun ("Phone") on it, however that video footage was ruled as the video with no visible phone video footage. And the video vantage point of the warehouse floor was rendered by this Court difficult to determine precisely what Plaintiff was doing in the video. At its best that video only shows Plaintiff appeared to be sitting and resting on a pile of wood within the warehouse while Defendant Wayfair's

own company had a work stoppage due to a purported IT incident. The bottom is

Plaintiff phone records and/or any of the video footage do not give this court a

physical view that Plaintiff had a cell phone device in his hand while working on

and/or on equipment or on the warehouse.

### III. Wayfair's RF-gun and/or IT outage prevented Plaintiff's whole department from working that day in question. The RF-gun and/or IT outage makes it a genuine issue of material fact Plaintiff and other Co-worker could not work at the time video footage was taken.

This Court has already ruled that all the provided video footage had no timestamp

and/or no date on them. A genuine issue of material facts exists with respect to

whether Plaintiff was even able to work due to a purported IT incident at the time

the footage was taken.

**D.E. 104 page 27 at ¶ 3 provides:**

> In addition, there is no timestamp and no date on the footage provided to the Court, thus complicating the Court's task in determining the actual time of this video footage. Lastly, assuming that this footage is from the date in question, a genuine issue of material fact exists with respect to whether Plaintiff was even able to work due to a purported IT incident at the time the footage was taken. Plaintiff has stated that such an event occurred and that this event precluded him from working. (See Pl. SUMP Resp. ¶¶ 63-64.). Indeed, records from that day indicate that there was a technology issue which prevented individuals from working entirely. (Incident Report at 2.) While Defendants claim that the incident was resolved well before Plaintiffs shift, Plaintiff contends that the incident was not resolved.

The Plaintiff's phone records do not remove the genuine issue of material facts with respect to whether Plaintiff was even able to work due to a purported IT incident at the time the footage was taken. The technology IT issue prevented individuals from working entirely, was separate from the morning shift. (Witness Damon Seals's Deposition Testimony 48:18:23, 56:13, 56:4:17, 56:18:24 Pages 42 through) Plaintiff has Witness Damon Seale's Deposition testimony to prove that Defendant Wayfair's company did have a technology issue which prevented the Bulk Department associates from working on that day in question. Defendant Shellie Weber and the Bulk department supervisor and manager knew about the technology IT issue. (Witness Damon Seals's Deposition 43:5:11)

Witness Damon Seals's Depo. Test.  Provides Exhibit 1:

> Q.    -- somewhere in Exhibit 62 (Ms. Weber's Term. Report.) where she's saying that she talked to Chris and talked to Donnie, and they was -- they did not know that we all was sitting around?
> A.    They knew.
> (83:12:16).

The technology IT issue prevented individuals that were assigned to the 4:30 PM Bulk Department from working on April 3, 2020 (Witness Damon Seals's Deposition 48:18:24). The Bulk Department associates have taken their assigned RF Gun off the work floor and out of the building (Witness Damon Seals's Deposition 27:7:21). The Bulk Department associates were on break (Siting around

doing nothing) because there was no work coming to them because of the IT

incident. (Witness Damon Seals's Deposition 43:5:11) Witness Damon Seals's

Deposition Testimony Provides Exhibit 1:

> Q.  So on this particular day when you say supervisors, you mean everybody you see that's in that particular video when you're going over that -- that's going over that way and that's sitting on bicycles, they wasn't stealing breaks, they was just actually waiting for ITI. Am I correct?
> A.     Yeah, waiting for the system to come back up or whatever they was doing.
> Q.     So it was just more -- it was just more people than the actual screen is showing now. Am I correct?
> A.     Yeah, it was like off and on. More people would come up, they'd say we had to wait. So some would leave and come back.
> Q.     But when they left, they wasn't considered to be stealing a break, was they?
> A.     Well, we were still on break because we couldn't do nothing, we couldn't work.
> (Witness Damon Seale's deposition 45:7:25).

Witness Damon Seale Testimony supports Paintiff's claims that the 4:30 PM Bulk

Department associates did experience an issue that prevented individuals from

working on April 3, 2020. Defendant's Lawyer Mr. Szyba examined witness

Damon Seale, and it was reiterated that there was a work stoppage due to the

technology IT issue. RF Gun was not working. (Exhibit 9 & 10, D. E. 10-2 pages 4

& 5). (Exhibit 1 deposition pages 77 through 82) Damon Seals's

Depo. Testimony Provides Exhibit 1:

> He recalls that the system was down for a while. (Damon Seale's deposition 77:20:23).

14

> He was not working for about two hours during that technology issue that prevented individuals from working. (Damon Seale's deposition 77:24:25, 78:1:2).
> He was on his cell phone beyond the barrier by the IT. (Damon Seale's deposition 77:24:25, 78:1:2).
> He was on Google sites and texting on his phone (Damon Seale's deposition 78:7:12).
> incident occurred which prevented Plaintiff from working.

There were 14 to 15 associated assigned to Bulk Department. (Witness Damon Seals's Depo. Test. 78:21:25 through 79: 1:2). All the RF scan gun were not working for the 14 to 15 Bulk Department associates. (Witness Damon Seals's Depo. Test. 79:3:12). When the RF scan gun are down associates cannot receive orders to pick for Defendant Wayfair's company. (Gerrod Smith's Depo. Test. 58:21:24) Plaintiff was not the only one that left the building and went to the parking lot during the RF-gun and/or IT outage. Witness Damon Seals also went out to his car; however, he was not part of HR Manager Shellie Weber investigation for theft of time. Witness Damon Seale's employment was terminated nor were any videos stored away for review.

**Witness Damon Seals's Depo. Test.  provides:**

> I went out the building to my car and I went and grabbed my snacks, and then I came back in the building, and then I went back to the IT office. Because I went and got my hard candy and I went back to the ITI office, and then they were still down. So then I left again.
> (Damon Seale's deposition 81:1:9)

The evidence shows that Plaintiff was sitting down in the hallway waiting for the IT, because he could not work due to the technology IT issue. Defendant Shellie Weber purposely excluded any videos that would identify where Plaintiff was sitting awaiting the IT person to fix the problem with the RF Guns. Gerrod Smith testimony identifies where the IT office located at. office.

Witness Gerrod Smith's Deposition Testimony

Provides Exhibit 2:

> Q.   Okay. So where would be the IT office at?
> A.   The IT office would be around the corner from where the entrance is, so past the bathrooms.
> Q.   So past the bathroom -- when you pass the bathroom, right there to that corner there's an end cap, and then there's another fenced-off area for the barricades so that way we don't hit the forklifts and you can walk around the sides.  Am I correct?
> A.   Correct.
> Q.   That's where the IT office would be at. Just back in the corner, correct. Once you turn the corner -- once you come in and make a left, IT is back in that corner.
> (Gerrod Smith's deposition 40:2:15)

Defendant Weber knew that the technology IT issue existed and that Plaintiff was parked in front of the IT office.

Witness Gerrod Smith's Deposition Testimony

Provides Exhibit 2:

> Q.   Okay. Could you read it for the record of what it's saying that I was doing?

A.    It says, Doing the time -- During the break time sitting on equipment for a period of time from 5:04 p.m. to 5:23 p.m.

MR. SZYBA:    Objection.

Q.    So that's what you read, right?

A.    Yes.

Q.    Okay. And in this part of it this is supposed to be me, right?

MR. SZYBA:    Objection.

Q.    That's what they sent me.

So now my question to you -- we're going -- I want you to tell me where is that person inside the video going to.

A.    He appears either going to the IT room --

Q.    Thank you.

A.    Okay.

Q.    And the IT room is what, the second door over there or what?

A.    The first door when you come in.

(Gerrod Smith's deposition 89:12:25 through 90:1:7)

Defendant Weber also did not collect video footage that showed other associates

from the 4:30 PM Bulk Department standing around in that area by the IT office

that Plaintiff was parked in front of.

Depo. Test.  Provides Exhibit Damon Seale's deposition

testimony Exhibit 2:

Q.    All right.    So it is your testimony that this particular video that was captured, I wasn't stealing a break.
I was actually -- I was actually standing there by my machine which was different from everybody else's, but we all was in that particular area waiting for ITI, waiting for IT.

A.    Exactly.

Q.    And you're saying in this video there's another missing part of this video that would show other people on the other side.

17

> A.    It would show people in the office.
> Q.    It would show people in the office.
> A.    People in the office, people going to the office.

(Damon Seale's deposition testimony 47:6:20).

Defendant Shellie Weber, not showing the IT office side of the video footage side, she covered up that there was a technology IT issue. You cannot find out what Plaintiff was really doing when Plaintiff was parked in front of the IT office. (Damon Seale's Deposition Testimony 51:2:12, 52:25 through 59:1:19, Gerrod Smith's deposition 133:25 through 134:1:12, 135:5:10. 51:2:12) Plaintiff was singled out from the rest of the 4:30 PM Bulk Department associated that was not working either. (Damon Seale's Deposition Testimony 56:10:24) A genuine issue of material facts still exists with respect to whether Plaintiff was even able to work due to a purported IT incident at the time the footage was taken. The video footage, having no timestamp and no date on them, still complicates the Court's task in determining the actual time of this video footage.

## IV.    The genuine issue of material facts that was established in D.E. 104 and 105 was not disturbed by Plaintiff's phone records.

This Court has already ruled that two genuine issues of material fact exist

## D.E. 104 page 27 at ¶ 1 provides:

> The Court finds that two genuine issues of material fact preclude summary judgment on this claim: (1) whether Plaintiff was using his phone in violation of Wayfair' s Electronic

18

Device Usage Policy and (2) whether an IT incident occurred which prevented Plaintiff from working.

This Court never gave an Order terminating the ruling of Document Entry 105. Document Entry 105 already settled Plaintiff's arguments as to Document Entry 105 regarding paragraphs 1-8. According to the orders of Document Entry 105 we are only supposed to be arguing the two genuine issues of material fact: (1) whether Plaintiff was using his phone on the warehouse work floor making Plaintiff in violation of Wayfair' s Electronic Device Usage Policy and (2) whether an IT incident occurred which prevented Plaintiff from working. This Court already denied the Defendant's Summary Judgement arguments as to Plaintiff's race discrimination claim under the NJLAD surrounding Plaintiff's termination as to all Defendants (Count V), and Defendants' Motion for Summary Judgement as to the race discrimination claim under Title VII surrounding Plaintiff's termination with respects to Wayfair (Count V). The Plaintiff's phone records still do not add a better vantage point of the warehouse floor, so we can know what Plaintiff was doing in the video. This Court should consider **[hearing a male's voice outside your office having a one -sided conversation, as someone would while on a phone call, making his way to the warehouse floor while speaking on his phone] [id. at D.E. 91-10 ¶ ¶ 26 & 27], is a male individual just simply in transit, and furthermore you're assuming the male will commit a violation**.

For all the reasons stated above, Plaintiff respectfully requests that this Honorable Court once again [DENY] Defendant's Motion for Summary Judgment for the second time.

Respectfully Submitted

Dated: July 23, 2026

/s/ John Moses

By: _____

John Moses
Plaintiff in Pro Se form